UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JACOBY P. GARRETT,

        Plaintiff,

        v.                                Case No. 21-cv-0638-bhl

SGT. S. PAUL, et al.,

        Defendants.

---

## SCREENING ORDER

---

Plaintiff Jacoby Garrett, who is currently serving a state prison sentence at the Fox Lake Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. This matter comes before the Court on Garrett's motion for leave to proceed without prepaying the full filing fee, motion for extension of time, and to screen the complaint.

### MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE

Garrett has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). Garrett has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. §1915(a)(2), and has been assessed and paid an initial partial filing fee of $60.56. The Court will grant Garrett's motion for leave to proceed without prepaying the filing fee.

## MOTION FOR EXTENSION OF TIME

Garrett filed a motion for extension of time to pay the remainder of the civil case filing fee. Dkt. No. 7. He explains that he is being released from custody on August 3, 2021, and he needs to find employment before he can pay the remainder of the filing fee. *Id*. Once Garrett is released from custody, he should submit payment as he is able. There are no court-imposed deadlines to pay the remainder of the filing fee. The Court will deny the motion for extension of time to pay the remainder of the filing fee as unnecessary.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

Garrett is an inmate at the Fox Lake Correctional Institution. Dkt. No. 1. The defendants are Health Services Unit (HSU) Manager Candace Whitman; and Correctional Officers Sgt. Paul, Sgt. Ziabel, and Capt. Belongia. *Id.*

On or around August 10, 2020, Garrett injured his foot/ankle and received the following medical restrictions from HSU staff: (1) 25mg prescription strength pain medication daily; (2) an Epsom salt soak at bedtime; (3) a muscle rub; (4) extra pillows; and (5) a lower bunk restriction. *Id.*, ¶1. The medical restrictions were set to expire on February 11, 2021, *see id.*, but Sgt. Hernandez (not a defendant) and Capt. Driscol (not a defendant) ordered Garrett to move to a top bunk sometime in November 2020 due to a housing issue caused by Covid-19, *see id.*, ¶¶9,12.

About a month later, on December 27, 2020, Garrett fell out of his upper bunk due to foot/ankle pain. *Id.*, ¶3. The following day, on December 28, 2020, Garrett contacted HSU and requested an extension of the lower bunk restriction and the expiration date was moved to February 28, 2021. *Id.*, ¶2. Garrett then presented the updated medical restriction to Sgt. Ziabel but Sgt. Ziabel "denied the request," got upset with Garrett, and ordered him to leave his office. *Id.*

On December 29, 2020, Garrett spoke to Sgt. Paul about the extended lower bunk restriction but Sgt. Paul "refused to honor [it]" and ordered Garrett to leave his office. *Id.*, ¶3. Later that day, Sgt. Paul told Garrett to report to HSU, where a nurse asked him why he "refused" his lower bunk restriction. *Id.*, ¶¶4-5. Garrett explains that Sgt. Paul had lied to HSU staff and falsely reported to them that he refused his lower bunk. *Id.*, ¶5. Garrett went back to his unit and again tried to talk to Sgt. Paul about his lower bunk restriction, but Sgt. Paul again denied the request and ordered him to leave his office. *Id.*, ¶6. Sgt. Paul then called Whitman and instructed her to remove Garrett's lower bunk restriction. *Id*. Garrett explains that Sgt. Paul is on the "Special Needs Committee," so Whitman complied with his request even though she knew that he had a medical need for the restriction. *Id.*, ¶¶6, 15. Garrett then spoke to Sgt. Ziabel and Capt. Belongia about his lower bunk restriction and they both indicated that they would not do anything about it. *Id.*, ¶7.

On January 4, 2021, a nurse examined Garrett in HSU for back pain caused by falling from his bunk the week before. *Id.*, ¶8. The nurse ordered x-rays and stated that she was going to order a lower bunk restriction. *Id*. When the nurse pulled up Garrett's file on the institution's database (WISC), it indicated that her boss (Whitman) had recently removed his low bunk restriction and entered a note instructing all nursing staff that they should not issue lower bunk restrictions because "once issued, they are hard to remove." *Id*. The nurse then decided not to order the lower bunk restriction because she did not want her boss getting mad at her. *Id*. A week later, Garrett's x-rays returned "negative." *Id.*, ¶9.

About two weeks later, on January 17, 2021, Garrett felt a sharp pain shooting down his legs and lower back as he climbed down from the top bunk. *Id.*, ¶10. He fell off of his bunk again and struck his head, causing significant pain and bleeding. *Id*. Staff took him to the emergency

room, where he received a CT scan and prescription strength pain medication. *Id.*, ¶¶10-11. Garrett returned to the institution, but he was again assigned to the same top bunk in his old cell. *Id.*, ¶¶11-12. Someone eventually made a phone call to HSU and his low bunk restriction was reinstated the following day, on January 18, 2021. *Id.*, ¶12. Garrett was also given a wheelchair to move around, but he never received any pain medication stronger than 325mg acetaminophen. *Id.*, ¶¶11-12. On January 19, 2021 and January 20, 2021, Sgt. Paul and another correctional officer ordered him to go to school even though he was in pain and couldn't walk well. *Id.*, ¶¶13-14. They refused his requests to go to HSU or speak to a supervisor. *Id.* Sgt. Paul also asked Garrett a "medical question," which allegedly violated the Health Insurance Portability and Accountability Act (HIPAA). *Id.*, ¶13. On January 20, 2021, Whitman allegedly admitted to Garrett during a conversation that Sgt. Paul had asked her to remove the low bunk restriction, so she complied. *Id.*, ¶¶14-15. Garrett remained in pain until February 2, 2021. *Id.*, ¶13. Garrett seeks monetary damages and an injunction.

## THE COURT'S ANALYSIS

"To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).

A prison official violates the Eighth Amendment where he is deliberately indifferent "to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim, Garrett must allege facts from which the Court can infer that: (1) he had an objectively serious medical need; and (2) the defendants were deliberately indifferent towards that medical need. *Est.*

of Miller by Chassie v. Marberry, 847 F.3d 425, 427–28 (7th Cir. 2017); Farmer v. Brennan, 511 U.S. 825 (1994); Petties v. Carter, 836 F.3d 722 (7th Cir. 2016)). "A medical need is sufficiently serious if the plaintiff's condition 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention.'" Roe v. Elyea, 631 F.3d 843 857 (7th Cir. 2011) (quoting Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005)). The condition does not need to be life-threatening to be serious; it needs only to be "a condition that would result in further significant injury or unnecessary and wanton infliction of pain" if not addressed. Gayton v. McCoy, 593 F.3d 610, 620 (7th Cir. 2010).

Garrett states that he had a significant foot/ankle injury for which HSU staff ordered a six-month lower bunk medical restriction. At screening, this allegation is sufficient to support the existence of an objectively serious medical need. Garrett further states that he told correctional officers Sgt. Ziabel, Sgt. Paul, and Capt. Belongia about the medical restriction but they refused to honor it, causing him to fall out of his top bunk on two different occasions and suffer additional pain and head injuries. Garrett states that Sgt. Paul told Whitman to remove his lower bunk restriction for no legitimate reason, and Whitman complied with the request without using her medical judgment. Based on these allegations, Garrett may proceed with an Eighth Amendment claim that Sgt. Ziabel, Sgt. Paul, Capt. Belongia, and Whitman were deliberately indifferent towards a serious medical need by cancelling and/or refusing to enforce a medically necessary lower bunk restriction.

Garrett also states that Sgt. Paul violated HIPAA by asking him a medical question. HIPAA applies to "covered entities" (such as medical care providers) who have access to confidential health information. See 42 U.S.C. §§ 1320d–1, 1320d–2. Ordinary individuals who ask someone a personal medical question do not typically trigger HIPAA provisions. In any case,

there is no private cause of action under HIPAA, *see Carpenter v. Phillips*, 419 Fed. Appx. 658, 659 (7th Cir. 2011); thus, Garrett cannot proceed with a "HIPAA claim" against Sgt. Paul.

## Conclusion

The Court concludes that the plaintiff may proceed with an Eighth Amendment claim that Sgt. Ziabel, Sgt. Paul, Capt. Belongia, and Whitman were deliberately indifferent towards a serious medical need by cancelling and/or refusing to enforce a medically necessary low bunk restriction.

**IT IS THEREFORE ORDERED** that the plaintiff's motion for leave to proceed without prepayment of the filing fee (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for an extension of time (Dkt. No. 7) is **DENIED** as unnecessary.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of the plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on the defendants.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, the defendants shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the agency having custody of the plaintiff shall collect from his institution trust account the **$289.44** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2).

The payments shall be clearly identified by the case name and number assigned to this action. If the plaintiff is transferred to another institution, the transferring institution shall forward a copy of this Order along with the plaintiff's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

The plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Plaintiff may find useful in prosecuting this case.

Dated at Milwaukee, Wisconsin this 2nd day of August, 2021.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge